IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,  ) ) ) | |
| Plaintiff, ) | |
| v. ) ) | CASE NO. 3:18mc3836-WKW-GMB [WO] |
| JOON, LLC, d/b/a AJIN USA, ) ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

This matter is before the court on an application filed by the Equal Employment Opportunity Commission ("EEOC") to enforce an administrative subpoena served on Joon, LLC, d/b/a Ajin USA ("Ajin") and Ajin's motion to quash this subpoena. Docs. 1 & 9. The district court referred this case to the Magistrate Judge for the resolution of all pretrial proceedings (Doc. 4), and the Magistrate Judge received oral argument regarding the pending motions on December 6, 2018. Having reviewed the parties' briefs and evidentiary materials, and the stay of this matter having been lifted (Docs. 18 & 21), the Magistrate Judge RECOMMENDS that the EEOC's application (Doc. 1) be GRANTED and that Ajin's motion to quash (Doc. 9) be GRANTED in part and DENIED in part.

**I.   BACKGROUND**

On August 2, 2016, the Birmingham District Office of the EEOC received a charge under Title VII of the Civil Rights Act of 1964 alleging that Ajin discriminates against Korean workers on the basis of their national origin. Doc. 1-1 at 2. The charging party is a former Ajin employee named Simon Gang. Doc. 1-1 at 2 & 5. He alleges in the charge

that Ajin has been discriminating against its Korean employees since March 3, 2016, and that he "believe[s] these practices continue." Doc. 1-1 at 5–6.  More specifically, Gang charges that Ajin employs its Korean employees through an internship program that subjects the interns to various forms of disparate treatment, including forced unpaid overtime and chauffeuring of Ajin's management team, an effective pay rate lower than the minimum wage, and different timekeeping requirements. Doc. 1-1 at 5–6.  Gang claims that the interns are incentivized to acquiesce to this treatment by the hope that Ajin may sponsor them for some form of immigration status in the United States. Doc. 1-1 at 5–6.  In 2015, Gang filed a separate charge alleging discrimination on the basis of his own Korean nationality and claiming that this discrimination resulted in his constructive discharge on March 26, 2015. Doc. 9 at 25–26.

## II.  DISCUSSION

The "EEOC is not empowered to conduct general fact-finding missions concerning the affairs of the nation's work force and employers.   The only legitimate purpose for an EEOC investigation is to prepare for action against an employer charged with employment discrimination." *EEOC v. Ocean City Police Dep't*, 820 F.2d 1378, 1380 (4th Cir. 1987), *vacated on other grounds*, 486 U.S. 1019 (1988).   For this reason, the existence of a valid charge is a prerequisite to the enforcement of an EEOC subpoena. *EEOC v. Shell Oil Co.*, 466 U.S. 54, 65 (1984) ("Accordingly, we hold that the existence of a charge that meets the requirements set forth in § 706(b), 42 U.S.C. § 2000e-5(b), is a jurisdictional prerequisite to judicial enforcement of a subpoena issued by the EEOC.").

The Eleventh Circuit has held, however, that "the role of a district court in a

proceeding to enforce an administrative subpoena is sharply limited; inquiry is appropriate only into whether the evidence sought is material and relevant to a lawful purpose of the agency." *EEOC v. Kloster Cruise Ltd.*, 939 F.2d 920, 922 (11th Cir. 1991). This is not the proper time for assessing potential defenses to the charges set forth in a valid claim. *EEOC v. Schwan's Home Serv.*, 707 F. Supp. 2d 980, 991 (D. Minn. 2010), *aff'd*, 644 F.3d 742 (8th Cir. 2011). Instead, the court "may inquire into (1) whether the administrative investigation is within the agency's authority, (2) whether the agency's demand is too indefinite, and (3) whether the information sought is reasonably relevant." *EEOC v. Tire Kingdom, Inc.*, 80 F.3d 449, 450 (11th Cir. 1996). Once the EEOC makes this showing, "the court will enforce the subpoena 'unless the subpoenaed party demonstrates that judicial enforcement of the subpoena would amount to an abuse of the court's process' or would create an undue burden on the subpoenaed party." *Schwan's Home Serv.*, 707 F. Supp. 2d at 986–87 (quoting *EEOC v. Technocrest Sys., Inc.*, 448 F.3d 1035, 1039 (8th Cir. 2006)). Ajin claims that the EEOC has not made an initial showing of a valid charge, and alternatively argues that its compliance with the subpoena would create an undue burden.

**A.**     **Validity of the Charge**

In disputing the EEOC's initial showing, Ajin claims that the charge is untimely and that it is not based on Gang's personal knowledge.

*1.*     *Timeliness*

An EEOC charge must be "filed within one hundred and eighty days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). However,

because a subpoena enforcement action is not the proper vehicle for probing all potential defenses to a charge, a "court may refuse to enforce an administrative subpoena on timeliness grounds '[o]nly if the charge . . . shows on its face that it is untimely, is concededly out of time, or [untimeliness] [i]s otherwise apparent." *Schwan's Home Serv.*, 707 F. Supp. 2d at 992 (quoting *EEOC v. City of Norfolk Police Dep't*, 45 F.3d 80, 83 (4th Cir. 1995)). Disputed facts relating to timeliness should not be resolved at the subpoena enforcement stage. *Pac. Maritime Ass'n v. Quinn*, 491 F.2d 1294, 1296 (9th Cir. 1974).

Ajin takes the position that the 2016 charge "is, on its face, untimely and not valid." Doc. 9 at 5. But, in the same breath, Ajin explains that its timeliness argument is not based solely on the facts appearing on the face of the 2016 charge, but on the facts in this charge read in conjunction with the fact, alleged in Gang's 2015 charge, that Ajin constructively terminated his employment on March 26, 2015. Doc. 9 at 7. Stripping away the 2015 charge leaves only the temporal allegations that do appear on the face of the charge at issue—that the discrimination commenced on March 3, 2016 and continued through the filing of the charge. Ajin has not provided any authority for the unorthodox position that the district court may inquire into facts that do not appear on the face of a charge when deciding whether that charge is timely "on its face."

Moreover, the charge includes the allegation that Gang "believe[s] these practices continue." Doc. 1-1 at 6. In *Quinn*, 491 F.2d at 1295, the Ninth Circuit had the occasion to address the functionally identical allegation that "[f]rom October 1968 [and] continuing to this present time I have been denied the opportunity to work at the supervisorial level by the above organizations. I believe this treatment is discriminatory in nature." In

4

support, the charge identified only one act of discrimination, and that act had occurred more than 180 days earlier. *Id.* In response to a timeliness objection to the subpoena, the EEOC maintained that the continuing nature of the violation absolved the otherwise late filing. *Id.* at 1296. On these facts, the Ninth Circuit held that the timeliness argument had been raised prematurely: "We do not know whether or not the violation, if any, is a continuing one; one of the reasons for conducting the investigation is to determine the answer to that very question." *Id.*

Just as in *Quinn*, Ajin's timeliness objection is premature when the face of the charge indicates that the discrimination is continuing in nature. The EEOC has the right to investigate a valid charge and to develop facts relevant to the charge. *See* 42 U.S.C. § 2000e-8(a). Once it has done so, Ajin's timeliness argument will be ripe. It would be unwise and improper for the court to wade into this question with incomplete facts at the subpoena enforcement stage. *Quinn*, 491 F.2d at 1296; *Schwan's Home Serv.*, 707 F. Supp. 2d at 992.

### 2. *Personal Knowledge*

The EEOC's "enforcement responsibilities are triggered by the filing of a specific sworn charge of discrimination." *University of Pa. v. EEOC*, 493 U.S. 182, 190 (1990). Ajin argues that this triggering event has not occurred in the instant case because Gang's allegations are not based on his personal knowledge. But a charge must only meet the requirements of 42 U.S.C. § 2000e-5(b) to be valid, *Shell Oil Co.*, 466 U.S. at 65, meaning that it must be "in writing under oath or affirmation and shall contain such information and be in such form as the [EEOC] requires." 42 U.S.C.A. § 2000e-5(b). And, as the EEOC

correctly notes, EEOC regulations specifically allow for third-party charges of discrimination: "A charge on behalf of a person claiming to be aggrieved may be made by any person, agency, or organization. The written charge need not identify by name the person on whose behalf it is made." 29 C.F.R. § 1601.7.

More importantly for present purposes, the regulations provide: "During the [EEOC] investigation, [EEOC] personnel shall verify the authorization of such charge by the person on whose behalf the charge is made." *Id.* Even so, Ajin maintains that this third-party verification must occur prior to its subpoena response. In support, Ajin relies on *Edelman v. Lynchburg College*, 535 U.S. 106, 113 (2002). But *Edelman* was an appeal of a motion to dismiss, not a subpoena enforcement case. And while the *Edelman* court mused that the timing and verification provisions of 42 U.S.C. § 2000e-5 were "open to interpretation," it did so along the way to holding that the provisions of § 2000e-5 "permit the relation back of an oath omitted from an original filing." *Id.* at 115 (reversing district court's dismissal of a Title VII claim where the claimant file a timely, but unsworn, charge that he verified after the time for filing expired). Ajin's argument nevertheless relies on the core assumption that when the *Edelman* court observed in *dicta* that an oath would be required "by the time the employer is obliged to respond to the charge," the response the court had in mind was a pre-litigation subpoena response. *See* Doc. 9 at 10. The facts and procedural posture of the *Edelman* opinion do not support Ajin's supposition, and it is inconsistent with the plain language of § 2000e-5.

The Fourth Circuit, on the other hand, has reached the precise issue presented here. In *Equal Employment Opportunity Commission v. Bethlehem Steel Corporation*, 765 F.2d

427, 428–29 (4th Cir. 1985), the EEOC served an administrative subpoena on Bethlehem Steel Corporation ("Bethlehem"). When Bethlehem refused to comply, the EEOC filed an enforcement action in the district court, and appealed after the district court denied enforcement. *Id.* at 429. Before the Fourth Circuit, Bethlehem contended that the subpoena was unenforceable because it was based on an invalid charge. *Id.* One of Bethlehem's arguments for invalidity was that the EEOC "did not, at the time the charge was filed, verify the authorization of the charges by the persons on whose behalf it was filed." *Id.* The Fourth Circuit easily dispatched this argument:

> The regulation further provides that "[d]uring the investigation, Commission personnel shall verify the authorization of such charge by the person on whose behalf the charge is made." Bethlehem would have us interpret that regulatory language to require verification at the filing of the charge. We decline to contort language with a clearly contrary meaning.

*Id.* (quoting 29 C.F.R. § 1601.7(a)). This court is no more inclined to contortion than the Fourth Circuit. Any perceived deficiency in the verification of Gang's charge may be cured during the course of the EEOC's investigation. The subpoena is enforceable.

**B. Scope of Requests**

In addition to its challenge to the validity of the charge, Ajin objects to specific requests in the subpoena as irrelevant or unduly burdensome. Although these objections largely miss the mark, some are well founded, as discussed below.

Pursuant to its statutory investigative powers, the EEOC enjoys "the right to copy any evidence of any person being investigated or proceeded against that relates to unlawful employment practices . . . and is relevant to the charge under investigation." 42 U.S.C. § 2000e-8. "Although courts have generously construed the term 'relevant' and have

7

afforded the Commission access to virtually any material that might cast light on the allegations against the employer, the Supreme Court has cautioned against construing the EEOC's investigative authority so broadly that the relevancy requirement is rendered a nullity." *EEOC v. Royal Caribbean Cruises, Ltd.*, 771 F.3d 757, 760 (11th Cir. 2014) (internal quotation marks omitted) (citing *Shell Oil Co.*, 466 U.S. at 68–69). The production of even relevant documents and information, however, should not be compelled when their value is outweighed by equitable considerations such as the burden of production. *Id.* In this way, EEOC subpoena enforcement caselaw mirrors the traditional proportionality analysis incorporated into Federal Rule of Civil Procedure 26(b)(1).

Here, Ajin argues that the requests are overly broad in that they seek information "regarding discrimination not allegedly suffered by Gang." Doc. 9 at 15. As with Ajin's personal-knowledge objection to the subpoena, this artificial limitation on the scope of the EEOC's investigation ignores the EEOC's power to investigate third-party charges of discrimination. This relevance objection is due to be overruled.

Ajin also attempts to show that compliance with the subpoena would be unduly burdensome, but it does so by submitting a vague and conclusory declaration from David Wilkerson, its General Manager of Resources and Administration. Doc. 9 at 28. Wilkerson states that the subpoena would require Ajin to search "the email accounts and text messages of countless employees" and "to manually review countless files and documents." Doc. 9 at 28. Rather than attempting to quantify the burden this would place on Ajin, the declaration offers only that subpoena compliance would require Ajin to "reassign several employees for days or weeks to the task of searching and reviewing

responsive documents." Doc. 9 at 28.   This showing is distinguishable from the showing made in *Royal Caribbean*, on which Ajin relies.   In *Royal Caribbean*, 771 F.3d at 762, the Eleventh Circuit weighed the "limited need for the subpoenaed information" against the responding party's showing of burden, which included the need to "manually review and cross-reference paper documents relating to thousands of former employees" and to "manually review and cross-reference paper documents relating to thousands of former employees."   To do so, the responding party "estimated that it would need to divert five to seven employees from their usual tasks for forty hours a week for two months." *Id.* Such specificity is entirely lacking from Wilkerson's declaration and its amorphous description of "countless" records, "several" employees, and "days or weeks."   In fact, there is nothing before the court to indicate whether it would take two days for three Ajin employees to comply with the subpoena or it would take six weeks for twenty employees to accomplish the production.   Without meaningful specificity, Ajin's evidence of undue burden is only moderately persuasive, especially when there is nothing in the record to suggest that the EEOC has reasonable alternative sources for the information that could substantiate Gang's charge of discrimination.

Based on these arguments, the scope of the charge under investigation, and the evidence in the record, the court makes the following findings and recommendations:

**Request No. 1.**   This request seeks evidence relevant to the charge under investigation in that the requested documents relate to the allegation that Korean employees participating in Ajin's internship program are subjected to various forms of disparate treatment.   However, this request is overly broad to the extent it is not limited as to time,

and even if temporally limited it broadly defines the scope of the request to encompass "any and all documents" in Ajin's possession relating to the internship program with no limitation as to the type of the documents or where and how they are stored. Balancing the need for the requested information against the burden of responding to such a broad request, the court recommends that Ajin be compelled to produce the responsive documents with the following limitations:

(1) that the request be limited to documents and information generated from March 3, 2016[1] to the present; and

(2) that Ajin be allowed to cull its electronically stored information by using the search terms "intern," "interns," "internship," "visa," and "passport," and review for production only the documents returned by this keyword search.[2]

**Request No. 2.** This request seeks evidence relevant to the charge under investigation in that the requested documents would identify the interns who are alleged to have been subjected to various forms of disparate treatment and who may or may not be able to substantiate these allegations. However, this request is overly broad to the extent it seeks information prior to March 3, 2016, the date on which the charge alleges that the discrimination commenced. Balancing the need for the requested information against the burden of responding to the request, the court recommends that Ajin be compelled to produce the responsive documents from March 3, 2016 to the present.

**Request No. 3.** This request seeks evidence relevant to the charge under

---

[1] On its face, the charge under investigation alleges that the discrimination commenced on March 3, 2016. Doc. 1-1 at 5. On the current record, the court finds that the subpoena is overly broad to the extent it seeks documents generated prior to the allegations of misconduct appearing on the face of the charge.

[2] This proposed limitation applies only to Ajin's search of electronically stored information. Ajin has provided insufficient information on the nature of its hard-copy documents for the court to attempt to craft any restriction on the search of these files based on the purported burden of production.

investigation in that the requested documents would provide contact information for the interns who may or may not be able to substantiate the allegations of various forms of disparate treatment. However, this request is overly broad to the extent it seeks information prior to March 3, 2016 by incorporating the time period stated in Request No. 2. Balancing the need for the requested information against the burden of responding to the request, the court recommends that Ajin be compelled to produce the responsive documents from March 3, 2016 to the present.

**Request No. 4.** This request seeks evidence relevant to the charge under investigation in that the requested documents would identify the individual or individuals from Ajin who supervised the internship program, and who may or may not be able to substantiate the allegations of disparate treatment of interns. However, this request is overly broad to the extent it seeks information prior to March 3, 2016 by incorporating the time period stated in Request No. 2. Balancing the need for the requested information against the burden of responding to the request, the court recommends that Ajin be compelled to produce the responsive documents from March 3, 2016 to the present.

**Request No. 5.** This request seeks evidence relevant to the charge under investigation in that the requested personnel files may or may not substantiate certain specific allegations of disparate treatment, including the claims that the interns keep different timekeeping records, are forced to work unpaid overtime, and are paid less than the minimum wage. However, this request is overly broad to the extent it seeks information prior to March 3, 2016 by incorporating the time period stated in Request No. 2. Balancing the need for the requested information against the burden of responding to

the request, the court recommends that Ajin be compelled to produce the responsive documents from March 3, 2016 to the present.

**Request No. 6.**  This request seeks evidence relevant to the charge under investigation in that the requested documents may or may not substantiate certain specific allegations of disparate treatment, including the claim that the interns are compelled to provide transportation for Ajin's management team.  However, this request is overly broad to the extent it seeks information prior to March 3, 2016 by incorporating the time period stated in Request No. 2.  Balancing the need for the requested information against the burden of responding to the request, the court recommends that Ajin be compelled to produce the responsive documents from March 3, 2016 to the present.

**Request No. 7.**  This request seeks evidence relevant to the charge under investigation in that the requested files may or may not substantiate certain specific allegations of disparate treatment, including the claim that the interns are motivated not to complain about mistreatment by the promise of immigration status sponsorship.  However, this request is overly broad to the extent it seeks information prior to March 3, 2016 by incorporating the time period stated in Request No. 2.  Balancing the need for the requested information against the burden of responding to the request, the court recommends that Ajin be compelled to produce the responsive documents from March 3, 2016 to the present.

### III.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The EEOC's application (Doc. 1) be GRANTED; and

2. Ajin's motion to quash (Doc. 9) be GRANTED in part and DENIED in part, as set forth above.

It is further ORDERED that the parties are DIRECTED to file any objections to this recommendation on or before **March 18, 2019.** Any objections filed must identify the specific findings in the Magistrate Judge's recommendation to which the party is objecting. Frivolous, conclusive, or general objections will not be considered by the district court. The parties are advised that this recommendation is not a final order of the court, and therefore it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the district court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the district court except upon grounds of plain error or manifest injustice. *See Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *Stein v. Reynolds Secs., Inc.*, 667 F.2d 33 (11th Cir. 1982).

DONE on the 4th day of March, 2019.

/s/ Gray M. Borden
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE